IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| BERTHA L. CRUMBLEY, | : | |
| Plaintiff, | : | |
| v. | : | No. 5:13-cv-291 (MTT) (CHW) |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Bertha L. Crumbley's application for benefits. Because the record contains prejudicial evidentiary gaps, and because meaningful judicial review is therefore not possible, it is **RECOMMENDED** that this case be **REMANDED** to the Commissioner for further proceedings pursuant to "sentence four" of 42 U.S.C. § 405(g).

## BACKGROUND

On August 31, 2009, Plaintiff applied for both Title II and Title XVI benefits. (Pl.'s Br., Doc. 13, p. 5). The record indicates that Plaintiff was diagnosed with advanced breast cancer in October 2008. (R. 317). Additionally, Plaintiff claims to suffer from hypertension, depression, anxiety, bouts of fatigue and nausea associated with chemotherapy treatment, and left arm pain following a mastectomy of her left breast in February 2009. (R. 216-18, 643-60).

Plaintiff, who was born in 1962, claims that she first stopped working in May 2006 to take care of a dying family member. (R. 110). Prior to that time, Plaintiff worked as a "cashier/shift manager," a furniture constructor, and a wheelchair pusher. (R. 111-32). Plaintiff

also indicated, at her administrative hearing on June 13, 2012, that she charged money for braiding hair in her home in 2010. (R. 646-47). As the Administrative Law Judge ("ALJ") noted in her opinion, Plaintiff's earnings record for 2010 shows over $11,000 of income. (R. 102).

The reviewing ALJ in this case determined that Plaintiff was "disabled" from September 1, 2008 through July 3, 2010, but that "medical improvement" occurred on July 4, 2010, and that Plaintiff's disability therefore ended on that day. (R. 16-31). Specifically, the ALJ found that:

> By July 4, 2010, [Plaintiff] had finished with chemotherapy for five months and her report had been removed for one month. A review of systems showed [that Plaintiff] had no complaints in May 2010 other than mild lymphedema on her arm. [Plaintiff] had medically improved since she had been undergoing chemotherapy.
>
> (R. 26)

Apart from Plaintiff's lymphedema, the ALJ determined that "the medical evidence of record . . . indicate[d] that [Plaintiff] was doing well with no [other] objective problem." (R. 28). In making this determination, the ALJ discounted pain questionnaires completed by Dr. Andicell Hammond and Dr. Gerald Goldklang, both treating physicians. (R. 28-29). The ALJ also rejected Plaintiff's own subjective testimony concerning the "intensity, persistence and limiting effects" of her symptoms. (R. 27-29). Regarding Plaintiff's alleged anxiety, in particular, the ALJ noted only that it was "mild," and "rarely mentioned." (R. 29).

## **STANDARD OF REVIEW**

Judicial review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and based on proper legal standards. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Id.* Under this limited standard of review, courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Rather, if a court finds that substantial evidence supports the ALJ's factual findings, then the court cannot overturn those findings even if other substantial evidence exists that is contrary to the ALJ's factual findings. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). That said, the failure by an ALJ to apply the correct legal standards or to provide a sufficient factual basis for the reviewing court to determine whether the correct legal standards were applied is sufficient grounds for reversal. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving benefits under the Social Security Act if they are unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

When evaluating a claimant's disability, the Commissioner ordinarily follows a five-step "sequential evaluation procedure." 20 C.F.R. §§ 404.1520; 416.920. These steps require the ALJ to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) the medical severity of Plaintiff's impairments; (3) whether those impairments meet or medically equal the severity of one or more of the impairments specified in the listing of impairments; (4) whether, based on the claimant's residual functional capacity ("RFC"), the claimant can return to past relevant work; and (5) whether, in light of the claimant's RFC, age, education, and work

experience, there are a sufficient number of jobs in the national economy that the claimant can perform.

If the ALJ determines that the claimant was disabled at some point but that he or she may no longer be disabled, additional steps apply. 20 C.F.R. §§ 404.1594, 416.994. Among other things, the ALJ must then determine (6) whether medical improvement has occurred; and (7) whether that medical improvement is related to the claimant's ability to work.

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

In this case, the ALJ determined that Plaintiff: (1) had not engaged in substantial gainful activity since September 1, 2008, her alleged onset date; (2) had the following severe impairments: "status-post breast cancer, status post mastectomy, hypertension, and anxiety;" and (3) did not have an impairment or combination of impairments that met or medically equaled the severity of one or more of the impairments specified in the listing of impairments. (R. 20-21). The ALJ then assessed Plaintiff's RFC, and determined that Plaintiff could perform:

> Light work as defined in 20 CFR 404.1567(b) and 416.967(b) . . . . In addition, [Plaintiff] can occasionally lift overhead on the left. [Plaintiff] requires the option to sit and stand as needed. [Plaintiff] can perform simple work. [Plaintiff] is unable to work a full eight-hour day due to fatigue from chemotherapy and recovery from surgery.

(R. 21)

Based on this RFC assessment, the ALJ determined that from September 1, 2008 through July 3, 2010, Plaintiff was unable to perform either (4) her past relevant work, or (5) other jobs existing in significant numbers in the national economy, and that Plaintiff had therefore been "disabled" during that time. (R. 23-25). The ALJ also determined, though, that (6) medical

improvement had occurred on July 4, 2010, and that (7) the improvement related to Plaintiff's ability to work. (R. 26). Specifically, and as noted above, the ALJ determined that

> By July 4, 2010, [Plaintiff] had finished with chemotherapy for five months and her report had been removed for one month. A review of systems showed [that Plaintiff] had no complaints in May 2010 other than mild lymphedema on her arm. [Plaintiff] had medically improved since she had been undergoing chemotherapy.
>
> (R. 26)

Based on this finding, the ALJ reassessed Plaintiff's RFC and determined that as of July 4, 2010, Plaintiff could perform:

> [L]ight work as defined in 20 CFR 404.1567(b) and 416.967(b) . . . . In addition, the claimant can occasionally lift overhead on the left. The claimant requires the option to sit and stand.
>
> (R. 27)

In making this second RFC assessment, the ALJ determined that "the medical evidence of record and [Plaintiff's] activities . . . show that she is not as limited as alleged." (R. 27). Regarding the medical evidence, in particular, the ALJ noted that Plaintiff "continued to report to Dr. Goldklang how well she felt with no symptoms [other] than pain on the left arm that [Dr. Goldklang] characterized as mild according to his treatment notes." (R. 29). The ALJ further noted that "the only evidence of record that seems to support the severity of [Plaintiff's alleged] post-cancer disability are pain questionnaires signed by Dr. Goldklang and Dr. Hammond." (*Id.*). The ALJ also determined that Plaintiff's "mild anxiety, rarely mentioned . . . [was] accommodated by a limitation to non-complex work." (*Id.*).

In light of Plaintiff's medical improvement and her updated RFC, the ALJ reassessed the types of jobs Plaintiff might be able to perform. The ALJ found that while Plaintiff still could not

5

perform her past relevant work, (R. 30), she could perform other unskilled, light or sedentary jobs existing in significant numbers in the national economy. (R. 30-31). As a result, the ALJ found that Plaintiff's disability had ended on July 4, 2010.

## ANALYSIS

Plaintiff challenges the Commissioner's decision on four grounds. She argues that the ALJ: (1) did not fully develop the record; (2) improperly discounted Dr. Goldklang's pain questionnaire; (3) improperly discredited Plaintiff's subjective testimony; and (4) relied at step five of her analysis on a vocational expert's answers to incomplete hypothetical questions.

Plaintiff's first ground for relief warrants remand. As noted by Plaintiff, there is little evidence in the record from JW Medical Care, ("JW Medical"), where Plaintiff saw Dr. Andicell Hammond regarding her blood pressure, and there is no evidence in the record from Newport Integrated Behavioral Healthcare, ("Newport"), where Plaintiff sought treatment for post-surgical depression. (R. 657-59). Although the ALJ had no direct regulatory obligation to obtain these records, which post-date Plaintiff's application,[1] the absence of these medical records creates prejudicial evidentiary gaps which, in turn, make meaningful judicial review impossible. As a result, a remand for further evaluation is necessary.

It is well-established that ALJs have a basic duty to develop a full and fair record. *See, e.g., Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (noting that a hearing before an ALJ is not an adversarial proceeding). In evaluating the necessity for remand, though, courts must determine "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *see also Childers v. Soc. Sec. Admin.*, *Comm'r*, 521 F. App'x 809, 815-16 (11th Cir. 2013). Prejudice, in this context, "requires

---

[1] *See, e.g., Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d), which states: "Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . .").

a showing that the ALJ did not have all of the relevant evidence before him in the record." *Townsend v. Comm'r of Soc. Sec.*, 2014 WL 481127 at *2 (11th Cir. Feb. 7, 2014). "The lack of medical . . . documentation supporting an applicant's allegations of disability," however, is "undoubtedly prejudicial." *Brown*, 44 F.3d at 935-36. This is so because without such evidence in the record, reviewing courts have no way of knowing whether the evidence would have sustained a claimant's application. *Id.*

Plaintiff argues that medical evidence from both JW Medical and Newport would have supported her application for benefits. Regarding the JW Medical records, Plaintiff claims she first sought treatment from Dr. Hammond in 2011 for her high blood pressure and associated symptoms, which include headaches, chest pains, and leg swelling. (R. 647-59). Dr. Hammond's pain questionnaire, which is in the record, (R. 626-30), supports this claim: it indicates that Dr. Hammond was a "treating physician"[2] and that he treated Plaintiff for at least "2 yrs." (R. 629-30).

Under Eleventh Circuit law, the opinions of treating physicians "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). In discounting Dr. Hammond's questionnaire, though, the ALJ stated that "Dr. Hammond's relationship to the claimant is unclear from the record." (R. 29). Thus, it does not appear that the ALJ identified Dr. Hammond as a treating physician, or that she adequately articulated "good cause" for discounting Dr. Hammond's opinion. *See, e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

While the ALJ did articulate good cause for discounting Dr. Goldklang's substantially similar pain questionnaire, (R. 29, 187-192), that same good cause does not also serve as grounds

---

[2] Indeed, Dr. Hammond checked "Yes" to the question: "Are you one of the [patient's] treating physicians?" (R. 629).

for discounting Dr. Hammond's questionnaire. As the ALJ noted, Dr. Goldklang's questionnaire is both internally inconsistent[3] and inconsistent with Dr. Goldklang's own treatment notes. (R. 29, 253-306, 462-574). Dr. Hammond's questionnaire, by contrast, is not internally inconsistent, and unlike Dr. Goldklang's treatment notes, Dr. Hammond's notes are not in the record for comparison.

It also seems likely that Dr. Hammond's treatment notes might have had more of a bearing on Plaintiff's physical capabilities than did Dr. Goldklang's notes. Dr. Goldklang, an oncologist, appears to have focused predominantly on Plaintiff's chemotherapeutic and surgical treatment, whereas Dr. Hammond, according to Plaintiff, focused on Plaintiff's post-surgical hypertension and associated symptoms. Because Dr. Goldklang's and Dr. Hammond's pain questionnaires both proposed limitations based on Plaintiff's hypertension—namely, Plaintiff's sitting and standing limitations—and because Dr. Hammond's treatment notes are more likely to contain information relevant to Plaintiff's hypertension, it was an error for the ALJ to discount both of the questionnaires simply by referencing Dr. Goldklang's treatment notes.

The same is true for Plaintiff's mental limitations. In discounting Plaintiff's alleged mental impairments, the ALJ noted only that "Dr. Goldklang . . . observed no unusual anxiety or evidence of depression," (R. 27-28), and that Plaintiff's anxiety was "mild" and "rarely mentioned even when receiving chemotherapy." (R. 29). Plaintiff indicated at her hearing, though, that she sought mental-health treatment at Newport beginning in 2010. (R. 657). Additionally, both Dr. Goldklang and Dr. Hammond indicated, in their questionnaires, that Plaintiff was taking mental-health medication. (R. 190, 629). Given these facts, the ALJ should, at the least, have questioned Plaintiff on the nature and severity of her mental impairments, and

---

[3] Dr. Goldklang indicated that Plaintiff could sit for two hours at one time during an average eight-hour workday, but also that she could sit for only one hour in total throughout the entire day. (R. 189).

on the types of treatment and medications prescribed. *Cf. Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that the record was adequate to support a decision where the "the ALJ's questioning brought out all aspects of how [a claimant's] symptoms affected her"). In other words, the ALJ also erred by discounting Plaintiff's alleged mental impairments simply by referencing Dr. Goldklang's treatment notes.

As the Commissioner demonstrates, there is no indication that Plaintiff alerted the ALJ, either before or after the hearing, of the need for Newport records. (Resp., Doc. 14, pp. 6-8). Similarly, in requesting that the ALJ assist in obtaining records from JW Medical, Plaintiff did not comply with regulations requiring a showing of need. (*Id.* pp. 6-7; R. 81). *See* 20 C.F.R. §416.1450(d)(2)). These arguments, while persuasive, pertain to the issuance of subpoenas, and not to the adequacy of the record, which ALJs have an independent obligation to ensure. Because the record in this case provides an inadequate basis upon which to review the ALJ's findings, and because meaningful judicial review is therefore not possible, Plaintiff's case must be remanded to the Commissioner for further proceedings. On remand, the Commissioner should reevaluate Dr. Hammond's questionnaire and Plaintiff's own subjective testimony regarding her mental limitations in accordance with the analysis set-out above. In doing so, the Commissioner may need to supplement the record and pose updated hypotheticals to a vocational expert.

## CONCLUSION

After careful consideration of the record, it is **RECOMMENDED** that Plaintiff's case be **REMANDED** to the Commission for further proceedings under "sentence four" of 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 17th day of June, 2014.

>s/ Charles H. Weigle
>Charles H. Weigle
>United States Magistrate Judge